1  Erica J. Van Loon (State Bar No. 227712)
   evanloon@nixonpeabody.com
2  Joshua J. Pollack (State Bar No. 215922)
   jpollack@nixonpeabody.com
3  NIXON PEABODY LLP
   300 S. Grand Avenue, Suite 4100
4  Los Angeles, California  90071-3151
   Telephone: (213) 629-6000
5  Facsimile:  (213) 629-6001

6  Attorneys for Plaintiffs
   OLMO ZUCCA and JACKSON LOMASTRO
7

8
               UNITED STATES DISTRICT COURT
9
               CENTRAL DISTRICT OF CALIFORNIA
10

11

12  OLMO ZUCCA and JACKSON LOMASTRO,          Case No. 25-2592

13                    Plaintiffs,              **COMPLAINT FOR:**

14        vs.                                  **1. DECLARATORY JUDGMENT**

15  SAMUEL AWUKU, professionally               **2. ACCOUNTING**
    known as SAMMY SOSO, an
16  individual; TYLA SEETHAL, an               **3. CONSTRUCTIVE TRUST**
    individual; SONY MUSIC
17  ENTERTAINMENT, a Delaware                  **4. UNJUST ENRICHMENT / QUASI CONTRACT**
    general partnership; and DOES 1
18  through 10, inclusive,                     **[DEMAND FOR JURY TRIAL]**

19                    Defendants.

20

21

22
        Plaintiffs Olmo Zucca and Jackson LoMastro (collectively, "Plaintiffs"),
23
   through undersigned counsel, for their Complaint against Defendants Samuel
24
   Awuku, p/k/a Sammy Soso, Tyla Seethal, Sony Music Entertainment ("SME"), and
25
   Does 1 through 10, inclusive (collectively, "Defendants"), state and allege as
26
   follows:
27

28
   4918-8593-9481.2
                                  - 1 -                           COMPLAINT

# INTRODUCTION

1. Defendant Tyla Seethal ("Tyla" or "Seethal") is a South African singer who gained international recognition after the release of her 2023 single *Water* (the "Song").

2. Since its release by Epic Records (an SME label) on July 28, 2023, the Song has won numerous accolades including the inaugural Grammy Award for Best African Music Performance, Billboard Music Award for Top Afrobeats Song, and MTV Video Music Award for Best Afrobeats Video.

3. To date, the Song has over ***one billion*** downloads on Spotify and over ***350 million*** views on YouTube (just from the official music video and official audio), and a significant number of remixes are being made and registered on the Song.

4. Plaintiffs Olmo Zucca ("Zucca") and Jackson LoMastro ("LoMastro") are two of the co-composers and co-authors of the Composition of the Song.

5. Plaintiffs Zucca and LoMastro also are two of the top-line producers of the Song, along with Rayan El-Hussein Goufar (p/k/a Rayo) ("Goufar") and Defendant Samuel Awuku, p/k/a Sammy Soso ("Awuku" or "Soso").

6. This lawsuit arises from Awuku's improper and unlawful efforts to take sole credit for production of the Song and to deprive Plaintiffs of top-line producer credit and royalties to which they are entitled from the Song.

7. Defendants have acknowledged that Plaintiffs are co-composers and co-authors of the Composition of the Song, but steadfastly refuse to (i) recognize and compensate Plaintiffs as top-line producers of the Song, and (ii) pay Plaintiffs all of the royalties to which Plaintiffs are entitled from the Song.

8. Defendants' refusal to credit Plaintiffs as top-line producers of the Song has resulted in harm to Plaintiffs' reputation and careers, and has cost Plaintiffs opportunities that otherwise would have been available to them had they been credited as top-line producers of the Song.

# PARTIES

9. Plaintiff Olmo Zucca is a songwriter, composer, producer, and guitarist, and at all times relevant hereto is and was an individual residing in the County of Los Angeles, California.

10. Plaintiff Jackson LoMastro is a songwriter, composer, and producer, and at all times relevant hereto is and was an individual residing in the County of Los Angeles, California.

11. Defendant Samuel Awuku is a record and vocal producer, songwriter, engineer, and DJ. Plaintiffs are informed and believe and based thereon allege that at all times relevant hereto Awuku is and was an individual residing in the United Kingdom.

12. Defendant Tyla Seethal is a singer. Plaintiffs are informed and believe and based thereon allege that at all times relevant hereto Seethal is and was an individual residing in Johannesburg, South Africa.

13. Plaintiffs are informed and believe and based thereon allege that Defendant Sony Music Entertainment is a Delaware general partnership, the partners of which are citizens of New York and Delaware. Plaintiffs are further informed and believe and based thereon allege that SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York 10010.

14. The true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true identities of such Doe Defendants when their identities are discovered. Plaintiffs are informed and believe, and thereon allege, that each such fictitiously named Doe Defendant is responsible in some manner for the events alleged in this Complaint and that Plaintiffs' damages as alleged herein were proximately caused by the conduct of such Doe Defendants, and each of them, and that Defendants in

1  committing the acts and omissions alleged herein acted as agents and servants of one
2  another, acted within the scope of their authority as agents and servants of each
3  other, and/or approved and ratified the acts and/or omissions of each other.

## JURISDICTION AND VENUE

15. Plaintiffs' first claim for relief arises under the copyright laws of the United States, as amended (17 U.S.C. § 101, *et seq*.). The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338.

16. This Court has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because they are so closely related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy and derive from a common nucleus of operative facts.

17. Additionally, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, as Plaintiffs are each a citizen of California, SME is a citizen of New York and Delaware, Awuku and Seethal are each a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18. Each of the Defendants is subject to personal jurisdiction in California because a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district; Defendants targeted the conduct complained of herein to California; and Defendants have caused injury to Plaintiffs within this judicial district.

19. Plaintiffs are informed and believe and based thereon allege that each of the Defendants also is subject to personal jurisdiction in California because they regularly transact, do, and solicit business in this judicial district. By way of example only, Awuku was in Los Angeles for the Grammy Awards in early 2024. While in Los Angeles, Awuku attended a nomination celebration party for the Song (to which he failed to invite Plaintiffs and Goufar). Plaintiffs are informed and believe and based thereon allege that, from February 2024 through April 2024,

1   Awuku stayed in an Airbnb in West Hollywood, California, and ran recording
2   sessions there.
3       20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)
4   because a substantial part of the events or omissions giving rise to Plaintiffs' claims
5   occurred in this district; Defendants have committed acts directed at this judicial
6   district, where both Plaintiffs reside; and Defendants are subject to the Court's
7   personal jurisdiction with respect to this action.

## ALLEGATIONS COMMON TO ALL CLAIMS

9       21.    A March 8-9, 2023, recording session for the Song took place in Santa
10  Monica, California. Four producers were present, including Zucca, LoMastro,
11  Goufar, and Awuku.
12      22.    During the recording session, Zucca and LoMastro produced numerous
13  audio files that are used in the final master recording of the Song, including piano,
14  Rhodes, bass guitar, electric guitar, sine pad, voice trumpet, and sound-designed
15  vocal. At the completion of the recording session, Zucca and LoMastro transferred
16  the audio files to Awuku's computer.
17      23.    Because all four producers contributed equally to the production of the
18  Song, each should be receiving full top-line producer credit and an equal percentage
19  of royalties.
20      24.    Zucca and LoMastro were not "session musicians," and their
21  contribution to the Song was not done on a work-for-hire basis.
22      25.    Zucca and LoMastro never received or signed any paperwork
23  indicating that they were session musicians for the Song, and they never were paid
24  on a work-for-hire basis for the Song. Rather, Zucca and LoMastro were full
25  producers. Indeed, Goufar has commented publicly that "the song was produced
26  from scratch by me @olmosound @jacklomastro and him [Awuku]. real producers
27  no instrumentalists. everyone was jamming."
28

26. In violation of Plaintiffs' rights, Awuku has taken sole credit for the entire production of the Song, negotiated and entered into a producer agreement directly with Seethal, failed to tell Plaintiffs (or Goufar) about it, and failed to cut Plaintiffs in on equal terms. Instead of each producer getting ¼ of 50% (i.e., 12.5%) of the music publishing royalties (which would be customary), Awuku took 15% for himself, allocated 10% to each of Zucca, LoMastro, and Goufar, and gave 5% to Christopher Alan "Tricky" Stewart.

27. Although Plaintiffs tried for months to resolve the matter with Awuku, Awuku adamantly refused to negotiate.

28. Plaintiffs made repeated efforts beginning in early July 2023 – ***before the Song was released*** – to obtain the credit and royalties to which they are entitled.

29. On June 6, 2023, Awuku informed Goufar via text message that Tyla would be releasing a song using music recorded during the March 8-9, 2023, recording session.

30. On June 15-16, 2023, Awuku asked Goufar via text message for the full names of the producers who participated in the recording session.

31. On July 2-3, 2023, Goufar informed Zucca and LoMastro via text message that Tyla would be releasing the Song in late July 2023. Goufar asked Zucca and LoMastro to sign a Split Sheet Agreement.

32. On July 5, 2023, LoMastro asked Goufar via text message, "Are they doing long form agreement as well? since this is just a split sheet." Goufar responded, "I can ask - this one only concerns publishing."

33. On July 5, 2023, LoMastro also received an Instagram message from Awuku: "Hey bro. Did you get the forms from Rayo to fill out?" LoMastro responded that he would send the form back ASAP, but also asked "will there be a formal agreement for the record?" Mr. Awuku replied, "No just publishing splits bro." Around this time, LoMastro's manager advised him to ask for Tyla's

1  manager's contact information so the parties could come to an agreement on
2  remaining terms instead of negotiating over Instagram messages.

3      34.    Zucca and LoMastro signed a "Tyla – Water Split Sheet Agreement"
4  on or about July 5, 2023 ("Split Sheet Agreement"). A true and correct copy of the
5  Split Sheet Agreement is attached hereto as **Exhibit 1.**

6      35.    The Split Sheet Agreement provides in pertinent part that "the
7  copyright in the Composition shall be secured and held in the name of the following
8  writers and publishers with writing/production credits, songwriter and publishing
9  income from the Composition being listed and divided as set forth below."

10      36.    The Split Sheet Agreement is not signed by anyone other than Zucca,
11  LoMastro, and Goufar, is undated, and expressly addresses only
12  "writing/production credits, songwriter and publishing income."

13      37.    Plaintiffs never waived any of their rights to master/record royalties or
14  standard SoundExchange royalties for the Song.

15      38.    On July 27, 2023, LoMastro messaged Mr. Awuku via Instagram
16  asking for "Tyla's managers email/phone ## for my MGMT." LoMastro explained
17  that the Song was being released that night and his management "wanted to get the
18  record papered up." Awuku replied, "you just got pub on this there's no paperwork
19  needed agreement wise. Hit up my manager if anything. He's been dealing with it
20  telling me what I need and who needs to sign what etc." Awuku then provided his
21  manager's email address.

22      39.    LoMastro's managers made several attempts to contact Awuku's
23  manager and Epic Records to address the incomplete paperwork. LoMastro's
24  managers received no response from either party.

25      40.    On October 20, 2023, LoMastro received an Instagram message from
26  Awuku, who stated that he "just got a message from the label" and wanted to talk
27  with LoMastro. LoMastro provided Awuku with his manager's contact information
28  and explained that "i don't deal w the business side of things brody."

41. On November 13, 2023, LoMastro's attorney, Matt Buser, contacted Tyla's attorney, Roger Patton, seeking proportionate participation in the producer terms along with crediting for the Song.

42. Mr. Buser also exchanged emails with Awuku's counsel from November 13, 2023, through November 21, 2023. Awuku's counsel stopped responding to Mr. Buser on November 21, 2023. LoMastro's managers subsequently made several attempts to contact Awuku's manager and SME to address the incomplete paperwork. They received no response from either party.

43. Beginning on or about March 29, 2024, Zucca and his managers separately sought producer credit and master points for Zucca, to no avail.

44. SME originally agreed to give Zucca the compensation he requested, but then said that Zucca had to take it up with Awuku's team because they were in charge of dispensing credits and points.

45. On May 13, 2024, Zucca and his manager had a meeting with Zeke Lewis, president of Epic Records, to play demos for Tyla and/or other artists. After congratulating Zucca on the Song, Mr. Lewis said that Zucca was not the first person to come to Epic Records looking to fix their credit for the Song. Lewis claimed that Awuku did not inform Epic Records that there were other producers on the Song.

46. Plaintiffs are informed and believe and based thereon allege that the copyright for the Composition of the Song identifies Plaintiffs as co-copyright claimants.

47. Plaintiffs are informed and believe and based thereon allege that the copyright for the Composition of the Song also identifies Plaintiffs as co-authors.

## FIRST CLAIM FOR RELIEF

**(For Declaratory Relief against all Defendants)**

48. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 47, inclusive, of this Complaint as if fully set forth herein.

49. An actual and present controversy now exists between Plaintiffs and Defendants.

50. Plaintiffs contend that they are co-authors of the Composition of the Song and top-line producers of the Song, which entitles each of Zucca and LoMastro to full top-line producer credit, a 12.5% share of the publishing royalties generated from the exploitation of the Song, a *pro rata* share of the master/record royalties relating to the Song, a *pro rata* share of standard SoundExchange royalties for the Song, and producer fees.

51. Defendants have denied that Plaintiffs are top-line producers of the Song, and have further denied that Zucca and LoMastro are each entitled to full top-line producer credit, a 12.5% share of the publishing royalties generated from the exploitation of the Song, a *pro rata* share of the master/record royalties relating to the Song, a *pro rata* share of standard SoundExchange royalties for the Song, and producer fees.

52. Because Defendants have refused to recognize Plaintiffs' status as top-line producers of the Song, and have failed to pay Plaintiffs all of the royalties they are owed from the Song, Plaintiffs have each suffered injury in fact.

53. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration of rights as follows: (a) Plaintiffs are each a top-line producer of the Song; (b) Plaintiffs are each entitled to full top-line producer credit for the Song, including on the copyright to the Composition for the Song; (c) Plaintiffs are each entitled to a prospective and retroactive 12.5% share of the publishing royalties generated from the exploitation of the Song; (d) Plaintiffs

are each entitled to prospective and retroactive *pro rata* master/record royalties relating to the Song; (e) Plaintiffs are each entitled to prospective and retroactive *pro rata* standard SoundExchange royalties for the Song; and (f) Plaintiffs are each entitled to producer fees for the Song.

## SECOND CLAIM FOR RELIEF

### (For Accounting against all Defendants)

54. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 53, inclusive, of this Complaint as if fully set forth herein.

55. Plaintiffs, as co-authors of the Composition for the Song and top-line producers of the Song, are each entitled to a 12.5% share of the publishing royalties generated from the exploitation of the Song and a *pro rata* share of the master/record royalties and standard SoundExchange royalties that Defendants have enjoyed from the exploitation of the Song.

56. By commercially exploiting the Song without accounting to Plaintiffs for all music royalties generated by the Song, Defendants have wrongfully deprived Plaintiffs of their rightful share therefrom.

57. Defendants are in sole control of the books and records needed to ascertain the amounts due to Plaintiffs pursuant to their special relationship as co-authors of the Composition of the Song and top-line producers of the Song. Plaintiffs have no means by which they can assemble the information necessary to calculate what is owed to them by Defendants.

58. Plaintiffs are entitled to an order of this Court directing Defendants to render a complete and honest accounting of all music royalties generated by the Song, including but not limited to mechanical royalties, performance royalties, synchronization royalties, and print royalties, and all sums due to Plaintiffs, and to pay Plaintiffs the sums shown by such accounting.

## THIRD CLAIM FOR RELIEF

### (For Constructive Trust against all Defendants)

59. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 58, inclusive, of this Complaint as if fully set forth herein.

60. By virtue of the foregoing, Plaintiffs are each entitled to a 12.5% share of the publishing royalties generated from the exploitation of the Song and a *pro rata* share of the master/record royalties and standard SoundExchange royalties for the song.

61. Defendants have wrongfully deprived each Plaintiff of a 12.5% share of the publishing royalties generated from the exploitation of the Song and of a *pro rata* share of the master/record royalties and standard SoundExchange royalties for the song.

62. By virtue of Defendants' acts, Defendants hold the music royalties derived from the exploitation of the Song as constructive trustees for the benefit of Plaintiffs and Defendants.

63. Plaintiffs are each entitled to immediate possession of a 12.5% share of the publishing royalties generated from the exploitation of the Song and a *pro rata* share of the master/record royalties and standard SoundExchange royalties for the Song held by Defendants as constructive trustees.

## FOURTH CLAIM FOR RELIEF

### (For Unjust Enrichment / Quasi Contract against all Defendants)

64. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation contained in Paragraphs 1 through 63, inclusive, of this Complaint as if fully set forth herein.

65. Defendants have each received and unjustly retained a benefit at Plaintiffs' expense.

66. Awuku has received a benefit in the form of being recognized as the sole top-line producer of the Song when, in fact, Plaintiffs also are top-line producers of the Song.

67. Defendants have each received and unjustly retained royalties from the Song that rightfully belong to Plaintiffs.

68. Defendants knew or should have known that Plaintiffs expected to receive (i) top-line producer credit for the Song, and (ii) all of the royalties to which Plaintiffs are entitled from the Song.

69. It would be inequitable and unjust for Defendants to retain the foregoing benefits.

70. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs have suffered damages in an amount to be proven at trial, but at a minimum $75,000, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor and against Defendants as follows:

1. That the Court declare as follows: (a) Plaintiffs are each a top-line producer of the Song; (b) Plaintiffs are each entitled to full top-line producer credit for the Song, including on the copyright to the Composition for the Song; (c) Plaintiffs are each entitled to a prospective and retroactive 12.5% share of the publishing royalties generated from the exploitation of the Song; (d) Plaintiffs are each entitled to prospective and retroactive *pro rata* master/record royalties relating to the Song; (e) Plaintiffs are each entitled to prospective and retroactive *pro rata* standard SoundExchange royalties for the Song; and (f) Plaintiffs are each entitled to a producer fee for the Song;

2. That the Court order an accounting of all music royalties derived from the exploitation of the Song by Defendants;

|   |   |
|---|---|
| 1 | 3. That the Court impose a constructive trust over the music royalties |
| 2 | from the exploitation of the Song pending the final disposition of this action; |
| 3 | 4. That the Court award Plaintiffs money representing restitution for |
| 4 | benefits unjustly obtained by Defendants; |
| 5 | 5. That Plaintiffs be awarded their reasonable attorney's fees and costs |
| 6 | pursuant to Section 505 of the U.S. Copyright Act (17 U.S.C. § 505); |
| 7 | 6. That Plaintiffs be awarded pre-judgment and post-judgment interest as |
| 8 | permitted by law; |
| 9 | 7. That Plaintiffs be awarded their costs of suit; and |
| 10 | 8. For such other and further relief as the Court deems to be just and |
| 11 | proper. |

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues in this case so triable.

Dated: March 25, 2025                             NIXON PEABODY LLP

By: */s/ Erica J. Van Loon*
    Erica J. Van Loon
    Joshua J. Pollack

    Attorneys for Plaintiffs
    Olmo Zucca and Jackson LoMastro

4918-8593-9481.2

COMPLAINT